# Appendix B

Trial Transcript p.80, line 28 through p.81, line 22

```
1              (Open court, defendant present.)
2     BY THE COURT:
3              Ladies and Gentlemen, please be
4        seated.
5              This is Docket No. 496720, State of
6        Louisiana versus John Eric Sims.
7              Counsel, make your appearances for
8        the record.
9     BY MR. GARDNER:
10             May it please the Court, Scott
11       Gardner on behalf of the State of
12       Louisiana.
13    BY MR. SIRERA:
14             David Sirera on behalf of the
15       defendant, John Sims.
16    BY THE COURT:
17             Let the record reflect Mr. Sims is
18       present in court with counsel.
19             Case is set for trial today.  Is
20       everyone ready to proceed?
21             Is the State ready?
22    BY MR. GARDNER:
23             State's ready for trial.
24    BY THE COURT:
25             Is the Defense?
26    BY MR. SIRERA:
27             Defense is ready.
28    BY THE COURT:
29             There are a couple of issues that I
30       need to address before we bring the jury
31       down.
32             First of all, are there any
```

```
 1            outstanding motions in the case?
 2      BY MR. SIRERA:
 3               I don't believe so, Your Honor.
 4      BY MR. GARDNER:
 5               None that I'm aware of.
 6      BY THE COURT:
 7               There were some old motions
 8          evidently filed.  The State's Motion for
 9          Discovery, I'm assuming, is satisfied; is
10          that correct?
11      BY MR. SIRERA:
12               That has been satisfied.
13      BY MR. GARDNER:
14               We have requested discovery from
15          Mr. Sirera.  He has indicated that there
16          are no documents, tangible items, reports
17          of mental evaluations or anything that we
18          would be entitled to, and if that remains
19          his representation, we are satisfied.
20      BY MR. SIRERA:
21               Yeah, all I have is what you gave
22          me.
23      BY THE COURT:
24               Okay.  Then let me -- okay.
25               I see some old motions that were
26          filed in the case, and I want to make
27          sure.  I do not know that they were ever
28          resolved.
29               And so I see that Ms. Fox, on behalf
30          of the defendant, filed a Motion to
31          Suppress Identification, a Motion to
32          Suppress Confession, a Motion to Suppress
```

# Appendix C

Trial Transcript p.249, line 20 through 27

```
 1  counselor at your school, you have lived with your
 2  grandmother, correct?
 3  A.    At first I lived with my nanny for about a
 4  month and a half.
 5  Q.    Who is your nanny? Would that be your great
 6  grandmother?
 7  A.    Yes.
 8  Q.    Her name is Jane?
 9  A.    (Affirmative nod.)
10  Q.    Okay. And then you lived with your
11  grandmother?
12  A.    Uh-huh.
13  Q.    And is her name Deborah?
14  A.    Yes.
15  Q.    Now, I'm going to ask you just a couple of
16  questions about the incident we're talking about
17  today. Okay?
18  A.    Okay.
19  Q.    You were pretending to sleep, right?
20  A.    No, I was in a light sleep, because I couldn't
21  sleep good.
22  Q.    Okay. You were lying facing the wall?
23  A.    (Affirmative nod.)
24  Q.    And didn't you say that you pretended to be
25  asleep?
26  A.    A light sleep.
27  Q.    A light sleep. Okay.
28        And you knew that it was John Eric who touched
29  you?
30  A.    (Affirmative nod.)
31  Q.    "Yes"?
32  A.    Yes.
```

# Appendix D

Trial Transcript p.243, line 20 through 32

1  Q.     And did you tell any adults for a long time?
2  A.     Took a while.
3  Q.     Did you tell your friend Bri?
4  A.     Yes.
5  Q.     Is that Brianna?
6  A.     Yes.
7  Q.     And when you told Brianna, did you tell her
8  whether or not she should tell somebody else, or she
9  should not tell somebody else?
10 A.     I told her she should not.
11 Q.     And as far as you know, did she tell anybody
12 else?
13 A.     No.
14 Q.     And did you have another friend, I think her
15 name was Jessica?
16 A.     I told her too.
17 Q.     And did you tell her whether or not she should
18 tell somebody, or she should not tell somebody else?
19 A.     Should not.
20 Q.     Now, eventually, at some time close to when
21 school was starting, or maybe school had already
22 started, did you tell your friend Hannah Gibson?
23 A.     Yes.
24 Q.     And what did Hannah tell you about that?
25 A.     She told me I should go to the counselor.
26 Q.     All right.  And by her telling you that and by
27 the things that y'all talked about, did that give you
28 the courage to go to your counselor?
29 A.     Yes.
30 Q.     And when you went to the counselor, was that
31 the counselor at Creekside?
32 A.     Yes.

# Appendix E

Trial Transcript p.276, line 4 through p.277, line 26

1 girl. She's -- you know, she's beautiful, but I
2 ain't going to say she's attractive. I'm not
3 attracted to her.
4 Q. You indicated that there was a haircut
5 incident that happened right before school; is that
6 correct?
7 A. Right.
8 Q. And so that would have been at some point in
9 August of 2010?
10 A. Yes, sir.
11 Q. And you believe that the haircut incident was
12 followed in quick order by Lauren's conversation with
13 her friend Hannah?
14 A. Yes, sir.
15 Q. You weren't present for the conversation with
16 Hannah?
17 A. No, sir.
18 Q. You wouldn't be able to comment on just how
19 much Lauren might have told Hannah "Please don't tell
20 me about it"; you just weren't there for that
21 conversation?
22 A. No.
23 Q. And you certainly weren't there, if there had
24 been earlier conversations, before any haircuts took
25 place wherein Lauren had told friends that this had
26 happened and begged them not to tell?
27 A. Are you asking?
28 Q. Yes.
29 You wouldn't know anything about that?
30 A. No, I wouldn't know.
31 Q. Because that wouldn't make any sense, would
32 it?

TWENTY-SECOND JUDICIAL DISTRICT COURT
FOR THE PARISH OF ST. TAMMANY
STATE OF LOUISIANA

NO. 496720     DIVISION "H"

STATE OF LOUISIANA

VERSUS

JOHN ERIC SIMS

FILED: January 23, 2019

_____
DEPUTY CLERK DaKota King, Deputy Clerk

## JUDGMENT ON APPLICATION FOR POST-CONVICTION RELIEF

This matter came before the Court on a successive Application for Post-Conviction Relief filed by Petitioner, John Eric Sims. In his application, Petitioner asserts a new claim of ineffective assistance of counsel. The Court, having considered the application and the record, finds that the application should be denied and dismissed as procedurally barred under La. C.Cr.P. art. 930.8. Therefore:

**IT IS ORDERED, ADJUDGED AND DECREED** that the Application for Post-Conviction Relief filed by Petitioner, John Eric Sims, is **DENIED** and **DISMISSED**.

Judgment Signed, this 18 day of Jan, 2019 at Covington, Louisiana.

_____
Honorable Alan Zaunbrecher
22nd Judicial District Court, Division "H"

A TRUE COPY
DyClerk, 22nd Jud. Dist. Court
ST. TAMMANY PARISH, LA.
DaKota King, Deputy Clerk

TWENTY-SECOND JUDICIAL DISTRICT COURT
FOR THE PARISH OF ST. TAMMANY
STATE OF LOUISIANA

NO. 496720                                                          DIVISION "H"

STATE OF LOUISIANA

VERSUS

JOHN ERIC SIMS

FILED: January 23, 2019

*[signature]*
DEPUTY CLERK
DaKota King, Deputy Clerk

## REASONS FOR JUDGMENT

Before the Court is a successive Application for Post-Conviction Relief filed by Petitioner, John Eric Sims. Petitioner was convicted of sexual battery following a jury trial. He received a sentence of twenty five years at hard labor. His conviction and sentence were affirmed by the First Circuit Court of Appeals in a judgment rendered May 2, 2012. Petitioner previously filed an Application for Post-Conviction Relief on December 19, 2013, wherein he asserted claims of ineffective assistance of trial and appellate counsel. Specifically, he argued in his initial Application for Post-Conviction Relief that trial counsel was ineffective for failing to conduct an adequate investigation, failing to object to alleged prosecutorial misconduct, failing to lay a proper foundation to question a defense witness, failing to substantiate a claim made to the jury during opening statements, and failing to object to a trial court ruling regarding hearsay. Petitioner further argued in his initial Application for Post-Conviction Relief that appellate counsel was ineffective for failing to raise certain trial errors in his appeal. The Court dismissed Petitioner's initial Application for Post-Conviction Relief on March 28, 2014 pursuant to La. C.Cr.P. art. 929. The Court found that Petitioner failed to carry his burden of proof under La. C.Cr.P. art. 930.2. The Louisiana Supreme Court denied Petitioner's Application for supervisory writs on August 28, 2015.

Because the instant Application for Post-Conviction Relief was filed on January 14, 2019, more than two years after Petitioner's conviction and sentence became final, it is time-barred under La. C.Cr.P. art. 930.8, unless Petitioner establishes that one of the exceptions in La. C.Cr.P. art. 930.8(A)(1)-(4) apply. Petitioner attempts to rely on La. C.Cr.P. art. 930.8(A)(1) to circumvent the procedural bar. This provision requires Petitioner to both allege and prove, among other things, "that *the facts upon which the claim is predicated* were *not known* to the *petitioner or his prior*

1

*attorneys.*" La. C.Cr.P. art. 930.8(A)(1) (emphasis added).

In the instant application, Petitioner claims that his trial counsel rendered ineffective assistance of counsel by failing to investigate a new theory of defense that is at odds with Petitioner's trial testimony. At trial, the victim, L.G., testified that when she was 11 years old, Petitioner came into her room at night when she was in a light sleep and touched her private areas under her clothing. Petitioner testified at trial. When asked whether the incident described by L.G. happened, Petitioner unequivocally answered, "No, Sir." Now, Petitioner insinuates as a hypothesis of innocence that touching may have occurred when he was checking L.G. for bedwetting and thereby performing "normal medical treatment or normal sanitary care," a defense to sexual battery under La. R.S. 14:43.1(B).[1] Petitioner has not offered any explanation for the discrepancy between his trial testimony to the effect that the event L.G. described simply *did not happen* and his new insinuations that any touching could have occurred in the course of providing "normal medical treatment or normal sanitary care."

The Court finds that Petitioner has failed to allege, much less prove, as required to overcome the procedural bar of 930.8(A)(1), that the alleged enuresis, related routine bed checks, and failure to investigate were not known to him or his prior attorneys. Since Petitioner claims he was one of the people who conducted bed checks on L.G. and the other children that Petitioner lived with at the time of the incident, the only reasonable inference that can be drawn is that he knew of the facts upon which his new claim is predicated throughout the entire duration of these

---

[1] Petitioner states:

> A key fact to this charge that was never investigated, to the petitioner's knowledge by anyone, was the fact that all three of these children suffered, in different degrees, from enuresis, also known as bedwetting, which is the only defense to sexual battery. La. R.S. 14:43.1(B) reads in pertinent part, "normal medical treatment or normal sanitary care shall not be construed as an offense under the provisions of this Section." Had the Pearl River Police Detective, the District Attorney, or Mr. Sims' public defender investigated this avenue of Mr. Sims' case, it would have revealed that all three of Mr. Sims and Ms. Gerchow's children suffered from enuresis with their son suffering the worst. He would often soil his bedding multiple times a week. At the time of this incident, petitioner's family lived in a camper trailer. The children shared a bunk bed at one end of the camper and it was not an unusual occurrence to smell the scent of urine. When Mr. Sims and/or Ms. Gerchow would smell the scent of urine, they would check the children to see if they had soiled their clothing and/or bedding. If one of the children had wet the bed, they would wake the child and tell him/her to go change their clothing. While the child was changing their clothes, clean bedding would be put down for them and they would be put back to bed.
>
> The investigation would have further revealed that Mr. Sims never had a conversation with his children, in which he explained to them, that he and/or their mother regularly checked on them during the night to see if they had soiled their clothing/bedding. It is not a conversation that a parent usually has with their children. It is just a conversation that a parent usually has with their children. It is just a duty that a parent performs because they care.

*See* App. for Post-Conviction Relief filed Jan. 14, 2019 at pp. 2-3.

2

proceedings. Petitioner's application is vague as to what his attorneys knew concerning the alleged enuresis and related routine bed checks upon which his new claim is predicated. Petitioner never explicitly states one way or the other whether his trial counsel knew that all of the children suffered from enuresis, only that to Petitioner's knowledge the fact "was never investigated." The only other information Petitioner has provided with regard to the knowledge (or lack thereof) of his attorneys was given in response to an inquiry in the standard form Application for Post-Conviction Relief as to why Petitioner failed to raise this ground in the trial court prior to conviction, on appeal, or in a prior post conviction relief application.

In response, Petitioner states:

> Petitioner was unable to prove that he received ineffective assistance of counsel until the discovery of the new evidence. Petitioner's prior application for post conviction relief was prepared by an offender counsel who filed on issues that the offender counsel believed to be issues and not what the petitioner requested from the offender counsel. When petitioner asked the offender counsel to file on the issues that the petitioner believed to be the issues, the offender counsel denied petitioner's request and told petitioner that he would not change anything on the application for post conviction relief. Offender counsel stated to petitioner that the petitioner could filed what the offender counsel drew up or the petitioner could file nothing. Because of petitioner's lack of knowledge of the law, he accepted what the offender counsel done believing this to be his only opportunity for relief.

Petitioner's foregoing statement is limited to the knowledge of Petitioner's post conviction counsel and fails to allege that counsel *did not know* about the facts upon which the instant claim is predicated. To the contrary, the statement hints that his post conviction counsel *did know* about the facts upon which the instant claim is predicated, since it suggests Petitioner informed counsel of what Petitioner "believed to be the issues" that should have been raised in his initial Application for Post-Conviction Relief. Petitioner has not given any indication of what his appellate counsel knew or did not know.

Petitioner also attributes his delay in asserting his new claim to his inability to prove his ineffective assistance of counsel claim until he discovered "new evidence," specifically a research study on the St. Tammany Parish Public Defender's Office (PDO) during the timeframe when the PDO represented Petitioner. Petitioner asserts he learned about the report in February of 2017 and obtained it on May 25, 2018. However, the report is unreliable and inadmissible to prove "that [Petitioner's] attorney did not receive any investigative work from the investigators of the 22nd PDO."[2] In addition, Petitioner's allegations demonstrate that he was aware of trial counsel's

---

[2] *See* App. for Post Conviction Relief filed Jan. 14, 2019 at p. 6.

alleged failure to investigate at the time of trial. Petitioner's assertion that his trial counsel failed to *personally* conduct any investigation is based on his trial counsel's response to a question from the Court on the first day of trial concerning discovery.[3] The trial occurred in 2011, approximately 8 years ago. Petitioner has not alleged that his other attorneys did not know about the alleged failure of trial counsel to investigate and the record suggests that at least some of them did. Indeed, Petitioner raised a different ineffective assistance of counsel claim based on trial counsel's failure to investigate in his initial Application for Post-Conviction Relief. Given Petitioner's vagueness and omissions concerning what he and his attorneys knew about the facts on which his new claim is predicated, the Court finds that Petitioner has not alleged or proven that he or his counsel *did not know* about the enuresis, the related routine bed checks, or the alleged failure of trial counsel to investigate upon which Petitioner's new ineffective assistance of counsel claim is predicated.

Moreover, even had Petitioner overcome the procedural bar, Petitioner's claim would likely lack merit. The Court finds it highly unlikely that Petitioner's trial counsel rendered a deficient performance by failing to investigate an alternative defense theory based on alleged exculpatory facts that Petitioner knew about, apparently neglected to reveal to his trial counsel (or anyone else), and omitted during his trial testimony after having sworn to tell the whole truth. *See State v. Joshua*, 50-556 (La. App. 2 Cir. 8/10/16); 201 So. 3d 284, 296 (counsel's investigative actions and choices may be influenced by information or decisions from the defendant that might, under the circumstances of the case, diminish or eliminate the need for further investigation). If Petitioner's trial counsel *did not know* about the alleged enuresis and bedchecks, as is required to circumvent the procedural bar, trial counsel would have had no reason to conduct any investigation to support a defense based on La. R.S. 14:43.1(B).

Accordingly, for the reasons previously stated, the Court finds that Petitioner's successive Application for Post-Conviction Relief is procedurally barred under La. C.Cr.P. art. 930.8, as Petitioner has failed to establish that any exception to the procedural bar applies.

Signed, this 18 day of Jan, 2019 at Covington, Louisiana.

Honorable Alan Zaunbrecher
22nd Judicial District Court, Division "H"

---

[3] *See* App. for Post Conviction Relief filed Jan. 14, 2019 at p. 6.

4

A TRUE COPY
DyClerk, 22nd Jud. Dist. Court
ST. TAMMANY PARISH, LA.
DaKota King, Deputy Clerk

# Appendix G

Louisiana First Circuit Court of Appeal's Judgment

# STATE OF LOUISIANA

# COURT OF APPEAL, FIRST CIRCUIT

STATE OF LOUISIANA

VERSUS

JOHN ERIC SIMS

NO. 2019 KW 0374

JUL 0 2 2019

In Re: John Eric Sims, applying for supervisory writs, 22nd Judicial District Court, Parish of St. Tammany, No. 496720.

BEFORE: CRAIN, THERIOT, AND HOLDRIDGE, JJ.

**WRIT DENIED.** Relator's writ application is an untimely and successive application for postconviction relief. See La. Code Crim. P. arts. 930.4 & 930.8. Having fully litigated his claims in accord with La. Code Crim. P. art. 930.6, hereafter, unless he can show that one of the narrow exceptions authorizing the filing of a successive application provided in La. Code Crim. P. art. 930.4 applies, relator has exhausted his right to postconviction relief. See **State ex rel. Bonvillain v. State**, 2015-2331 (La. 3/14/16), 186 So.3d 644 (per curiam).

WJC
MRT
GH

COURT OF APPEAL, FIRST CIRCUIT

DEPUTY CLERK OF COURT
FOR THE COURT