**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| JOHN ERIC SIMS | CIVIL ACTION |
| VERSUS | NO. 20-2645 |
| KEITH COOLEY, WARDEN | SECTION: "I" (5) |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.   Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.   *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

### Procedural History

Petitioner, John Eric Sims, is a convicted inmate currently confined at the Allen Correctional Center in Kinder, Louisiana.   On October 25, 2010, he was charged by bill of information with the June 2010 sexual battery of a juvenile.[1]   On June 14, 2011, a jury found him guilty as charged.[2]   On July 5, 2011, his motions for new trial and for post-verdict judgment of acquittal were denied and he was sentenced to imprisonment for a term of 25

---

[1]  State Rec., Vol. 1 of 8, Parish of St. Tammany, Bill of Information.

[2]  State Rec., Vol. 1 of 8, Minute Entries, 6/13/11 and 6/14/11.

years at hard labor without benefit of parole.[3]    On July 25, 2011, his motion to reconsider the sentence was denied.[4]

Sims appealed, asserting in counseled assignments of error that his sentence was illegal and excessive.    On May 2, 2012, the Louisiana First Circuit Court of Appeal affirmed his conviction and sentence.[5]    Sims did not file an application for writ of certiorari with the Louisiana Supreme Court.[6]

On or about November 28, 2012, Sims filed a motion for production of documents.[7] On December 5, 2012, the state district court denied the motion.    On December 11, 2013, he submitted an application for post-conviction relief to the state district court.[8]    In that

---

[3]  State Rec., Vol. 1 of 8, Minute Entry, 7/5/11.

[4]  State Rec., Vol. 1 of 8, Motion to Reconsider Sentence.

[5]  *State v. Sims*, 2011-KA-1876, 2012 WL 1552048 (La. App. 1st Cir. May 2, 2012).

[6]  Rec. Doc. 1, Petition p. 2 Question 9 (g).

[7]  State Rec., Vol. 4 of 8, Motion for Production of Documents with signed certificate of service dated November 28, 2012, stamped as filed December 3, 2012, and Order denying signed December 5, 2012.

[8]  State Rec., Vol. 4 of 8, Uniform Application for Post-Conviction Relief. Federal habeas courts apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing by a *pro se* prisoner, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006). When that date cannot be gleaned from the state court record, the Court will use the signature date of the application as the filing date, in that the application was obviously placed in the mail no earlier than the date it was signed. *See United States v. Minor*, 582 F. App'x 315, 316 (5th Cir. 2014); *Estes v. Boutté*, Civ. Action No. 19-2289, 2020 WL 1990823, at *2 (E.D. La. Mar. 6, 2020), *adopted*, 2020 WL 1984331 (E.D. La. Apr. 27, 2020); *Crochet v. Goodwin*, Civ. Action No. 13-3106, 2014 WL 5093995, at *2 n. 10 (E.D. La. Oct. 8, 2014); *Thornton v. Terrell*, Civ. Action No. 09-1632, 2009 WL 4855743, at *1 n. 1 (E.D. La. Dec. 4, 2009). Here, the State uses the date his proof of service accompanying the post-conviction relief application was signed, December 11, 2013, as the filing date, as does the

application, he asserted that (1) trial counsel was ineffective in failing to conduct adequate investigation, to object to prosecutorial misconduct, to lay a proper foundation to question a defense witness, to substantiate a claim made to the jury during opening statements, and to object to the trial court's ruling on hearsay; and (2) appellate counsel was ineffective in failing to raise certain claims of error on appeal.    On March 28, 2014, the district court denied relief on the merits.[9]    He was given until April 28, 2014 to file his writ application with the court of appeal.    On April 17, 2014, Sims timely filed a related supervisory writ application with the Louisiana First Circuit.    On July 14, 2014, the court of appeal denied relief.[10]    On July 22, 2014, Sims filed a supervisory writ application with the Louisiana Supreme Court.    On August 28, 2015, the Louisiana Supreme Court denied relief.[11]    On January 19, 2016, the United States Supreme Court denied his petition for writ of certiorari.[12]

On or about May 23, 2017, Sims filed a motion for production of documents.[13]    On September 27, 2017, the state district court denied the request.    Sims filed a related supervisory writ application with the Louisiana First Circuit.    On February 20, 2018, his

Court.

[9]  State Rec., Vol. 4 of 8, District Court Order denying PCR, 3/28/14.

[10]  *State v. Sims*, 2014-KW-0587 (La. App. 1st Cir. July 14, 2014); State Rec., Vol. 5 of 8.

[11]  *State ex rel. Sims v. State*, 2014-KH-1571 (La. 2015), 175 So.3d 398; State Rec., Vol. 4 of 8.

[12]  *Sims v. Louisiana*, 577 U.S. 1106, 136 S.Ct. 902, 193 L.Ed.2d 796 (2016).

[13]  State Rec., Vol. 4 of 8, Motion for Production of Documents with Affidavit of Verification signed and dated May 23, 2017 and Order denying September 27, 2017.

writ application was denied.[14]

On January 10, 2019, Sims submitted a second application for post-conviction relief to the state district court.[15]    In that application, he claimed to have recently discovered new evidence to support his claims that trial counsel was ineffective for failing to investigate and for carrying an excessive caseload.    He alleged that trial counsel was ineffective for failing to investigate the theory that the victim suffered from enuresis and defendant was simply performing normal medical treatment or sanitary care for the victim.    He also mentioned learning about a study dated January 2012 conducted on the 22nd JDC Public Defenders' Office showing a lack of investigative support and overworked criminal public defenders around the time of his criminal proceedings.    On January 18, 2019, the state district court denied relief on procedural grounds finding the application untimely.[16]    Sims was given until March 15, 2019 to seek supervisory writs with the court of appeal.    On March 11, 2019, he submitted a supervisory writ application to the Louisiana First Circuit.    On July 2, 2019, the court of appeal denied his supervisory writ application as untimely and repetitive.[17]    On July 23, 2019, he submitted a related supervisory writ application to the

---

[14] *State v. Sims*, 2017-KW-1596, 2018 WL 1009190 (La. App. 1st Cir. Feb. 20, 2018); State Rec., Vol. 6 of 8.

[15] State Rec., Vol. 4 of 8, Uniform Application for Post-Conviction Relief signed and dated January 10, 2019.

[16] State Rec., Vol. 4 of 8, State District Court Judgment with written reasons denying PCR, 1/18/19.

[17] *State v. Sims*, 2019-KW-0374, 2019 WL 2895394 (La. App. 1st Cir. July 2, 2019); State Rec., Vol. 7 of 8, Louisiana First Circuit Writ No. 2019-KW-0374.

Louisiana Supreme Court.    On July 24, 2020, the Louisiana Supreme Court likewise denied his writ application as untimely and repetitive.[18]

On September 24, 2020, he filed the instant federal application for habeas corpus relief.[19]    In his application, he claims that trial counsel was ineffective for failing to investigate the victim's enuresis as a viable defense to sexual battery as it would explain the need to touch and check the victim while she slept.    The State filed a response asserting that the application should be dismissed as untimely.[20]    Sims did not file a reply.

## Analysis

### A.  *Statute of Limitations*

The State correctly contends that Sims' federal application is barred by the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1), which became effective on April 24, 1996, as part of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).    Title 28 U.S.C. § 2244(d) provides:

(1)   A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

   A.   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

   B.   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented

---

[18]  *State v. Sims*, 2019-KH-1341 (La. 2020), 299 So.3d 53; State Rec., Vol. 8 of 8.

[19]  Rec. Doc. 1.

[20]  Rec. Doc. 12.

from filing by such State action;

C.      the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D.      the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)      The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Sims argues that subsection D applies in this case due to his belated discovery of evidence.[21]    Subsection D provides for delayed commencement of the federal limitations period if a petitioner's claim is based on a factual predicate which could not have been discovered earlier through the exercise of due diligence.    Contrary to Sims' argument, this section does not provide an extra window of time for researching claims until a petitioner discovers every piece of evidence to support his claims.    As Fifth Circuit precedent makes clear:

A habeas petitioner's AEDPA limitations period begins running from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). "[T]his means the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim." *In re Davila*, 888 F.3d 179, 189 (5th Cir. 2018) (quoting *In re Young*, 789 F.3d 518, 528 (5th Cir. 2015)). Section 2244(d)(1)(D) does not "convey a statutory right to an extended delay ... while a habeas petitioner gathers every possible scrap of evidence that might ...

---

[21]  Rec. Doc. 1, Petition, p. 11 Question 18.

support his claim." *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998).

*Osborne v. Hall*, 934 F.3d 428, 432-33 (5th Cir. 2019).

Here, Sims alleges that the federal one-year limitations period began to run on May 25, 2018.    He offers the following explanation as to his "discovery" of a report that supported his claims that counsel was ineffective due to failure to investigate and an excessive caseload:

> The facts to which this petition is predicated were not known to the Petitioner until, while diligently attempting to discover any post-conviction claims that may exist, Petitioner learned that a report had been conducted through "A Joint Program of the Bureau of Justice Assistance, U.S. Department of Justice, and American University's School of Public Affairs." This report is a preliminary assessment of the working conditions of the St. Tammany Public Defender's Office during the time the St. Tammany Public Defender's Office represented Petitioner.
>
> Petitioner wrote a letter to American University in Washington, D.C. in December of 2017, requesting a copy of the Technical Assistance Report. Petitioner received a copy of this newly discovered evidence on May 25, 2018, which is the date on which the factual predicate of the claims presented were discovered through Petitioner's exercise of due diligence. This report contains the facts to show that Petitioner's court appointed attorney, Mr. Sirera, had no investigative support with an excessive caseload. (See Appendix A).[22]

Sims wrongly implies that the report was the factual predicate for his claim of ineffective assistance of counsel.    As the state district court pointed out in rejecting his "newly discovered evidence" claim in an unsuccessful attempt to file his second untimely, repetitive application for post-conviction relief, Sims first asserted the claim that trial counsel was ineffective based on substandard investigation when he filed his initial post-conviction relief application in <u>2013</u>.    Indeed, the state-court record shows that Sims has

---

[22]  Rec. Doc. 1, Petition, p. 12.

known about trial counsel's alleged ineffectiveness for failing to investigate arguably since trial.[23]   Sims was present and heard defense counsel inform the court on the first day of trial that he had no discovery to provide the State prosecutor because "all I have is what you gave me."[24]   Sims voiced his concerns with defense counsel's alleged inept handling of his case during his sentencing proceedings when the trial court gave him an opportunity to make a statement.[25]   Sims does not deny that he has always known the children suffered from enuresis, which is the basis for his latest ineffectiveness claim that counsel should have investigated and pursued a different defense theory.    Now it seems he believes in hindsight that the "normal sanitary care" defense theory would have been stronger than the one pursued at trial.   Regardless, the information available to Sims that predated the report plainly sufficed to provide the factual predicate for his claims of ineffective assistance of counsel.

Although the existence of the technical-assistance report showing that his public defender was carrying a significant case load and lacked investigative assistance may bolster Sims' claims, it cannot be said to have provided the factual predicate for his claim that counsel failed to investigate a defense theory or otherwise performed deficiently due to an excessive caseload.   Again, the relevant marker for the AEDPA clock is "the date a

---

[23] State Rec., Vol. 7 of 8, Supervisory Writ Application to the Louisiana First Circuit, 2019-KW-0374, pp. 5-6.

[24] State Rec., Vol. 1 of 8, Trial Transcript, p. 81. Defense counsel acknowledged that he was given "open file" discovery.    *Id*. at 82.

[25] State Rec., Vol. 2 of 8, Sentencing Transcript, pp. 353-54.

petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim." *Osborne*, 934 F.3d at 434 (citing *In re Davila*, 888 F.3d at 189 (quoting *In re Young*, 789 F.3d at 528)). Furthermore, even though Sims did not request the report until 2017, the technical assistance report to which Sims refers was dated January 2012.[26] It was thus discoverable and available to Sims long before 2017 when he claims to have discovered its' existence while working in the prison law library.[27]

Under the circumstances, the factual predicate for his claims of ineffective assistance of counsel based upon counsel's failure to investigate and excessive caseload could have been discovered much earlier than 2018 and well before he sought state or federal habeas relief. For the reasons stated, Subsection D does not render his federal application timely based on any allegations related to belated discovery of evidence.

If no delayed start date for the limitations period applies, a petitioner must bring his Section 2254 claims within one year of the date on which his underlying criminal judgment becomes "final." Regarding finality, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is

---

[26] Rec. Doc. 1-1, Petition, Exhibit 1, Technical Assistance Report.

[27] State Rec., Vol. 7 of 8, Louisiana First Circuit Writ No. 2019-KW-0374, Appendix, Memorandum in Support of PCR, p. 3.

entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2003). However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires." *Id.* at 694; *see also Foreman v. Dretke*, 383 F.3d 336, 338 (5th Cir. 2004) (Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).

Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review. *See Foreman*, 383 F.3d at 338–39. As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal. *See Causey v. Cain*, 450 F.3d 601, 606 (5th Cir. 2006); *Roberts*, 319 F.3d at 693.

*Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008).

Sims' state criminal judgment of conviction became final for AEDPA purposes on June 1, 2012, 30 days after the Louisiana First Circuit Court of Appeal denied his direct appeal and the time expired for seeking review with the Louisiana Supreme Court.[28]    La. S.Ct. Rule X, § 5(a) ("An application seeking to review a judgment of the court of appeal ... after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal").    The AEDPA one-year limitations period commenced on that date and expired one year later.[29]    Therefore, Sims' federal petition, filed on September

---

[28]  The notice of judgment was mailed the same day.    State Rec., Vol. 4 of 8, Notice of Judgment dated May 2, 2012, Louisiana First Circuit Court of Appeal.

[29]  Because the 365th day of the limitations period fell on a Saturday, petitioner's deadline was extended through the following Monday, June 3, 2013. *See Flanagan v. Johnson*, 154 F.3d 196, 202 (5th Cir. 1998) ("We hold that [Fed.R.Civ.P.] 6(a) applies to the computation of the one year limitation period in § 2244(d) of AEDPA."); Fed. R. Civ. P. 6(a) (if the last day of an applicable period is a Saturday, a Sunday, a legal holiday, or a day when the clerk's office is inaccessible, the period runs until the end of the next day that is not one of those days).

24, 2020, is untimely unless the deadline was extended through tolling.

B. *Statutory Tolling*

The Court finds no basis for statutory tolling in this case.   The AEDPA expressly provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."   28 U.S.C. § 2244(d)(2).   However, Sims had no such applications pending before the state courts during the applicable one-year period.   Although he filed an application during the relevant period requesting documents, it is clear that applications seeking documents are not considered "application[s] for State post-conviction or other collateral review" for tolling purposes because they are preliminary in nature and do not directly call into question the validity of a petitioner's conviction or sentence.   *Higginbotham v. Tanner*, Civ. Action No. 10–1130, 2011 WL 3268128, at *1 (E.D. La. July 29, 2011); *Parker v. Cain*, Civ. Action No. 02–0250, 2002 WL 922383, at *2 n. 22 (E.D. La. May 1, 2002), *certificate of appealability denied*, No. 03–30107 (5th Cir. June 23, 2003); *Boyd v. Ward*, Civ. Action No. 01–493, 2001 WL 533221, at *4 (E.D. La. May 15, 2001), *certificate of appealability denied*, No. 01–30651 (5th Cir. Aug. 22, 2001).

Here, Sims' one-year federal limitations period continued to run uninterrupted after June 1, 2012.   His state-court application for post-conviction relief was not filed until December 11, 2013, well *after* the one-year federal limitations period had already expired, and therefore could not possibly afford him any tolling benefit.   *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000); *Magee v. Cain*, Civ. Action No. 99–3867, 2000 WL 1023423, at

*4 (E.D. La. July 24, 2000), *aff'd*, 253 F.3d 702 (5th Cir. 2001); *Williams v. Cain*, Civ. Action No. 00–536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000).    Simply put, once the federal limitations period expired, "[t]here was nothing to toll."    *Butler v. Cain,* 533 F.3d at 318. Because Sims had no other state applications pending at any time during the one-year limitations period, he clearly is not entitled to any tolling credit pursuant to Section 2244(d)(2).

C.  *Equitable Tolling*

The AEDPA's statute of limitations is subject to equitable tolling.    *Holland v. Florida*, 560 U.S. 631, 645 (2010).    However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."    *Id*. at 649 (internal quotation marks omitted); *see also Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances").    A petitioner bears the burden of proof to establish entitlement to equitable tolling.    *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002).

Sims does not argue that equitable tolling applies in this case.    Furthermore, the record shows an inexplicable lack of diligence on his part and no extraordinary circumstances that would warrant equitable tolling.    To the extent he may argue that learning about the report constitutes an extraordinary circumstance, Sims does not claim that he was denied access to the prison law library or that he was prevented in any way from accessing the report.    The fact that he may possess limited legal knowledge or research skills to find this piece of evidence in support of his claim is not an extraordinary

circumstance for purposes of equitable tolling.    It is well-settled that mistake, ignorance of the law, and a prisoner's *pro se* status do not suffice to justify equitable tolling.    *Johnson v. Quarterman*, 483 F.3d 278, 286 (5th Cir. 2007); *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002); *Fierro v. Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000).    Accordingly, the Court finds that Sims is not entitled to equitable tolling.

### D. Actual Innocence

Sims has not invoked the actual-innocence exception to avoid the time-bar.    To the extent that he might attempt to argue that he is actually innocent of the sexual battery, he offers no evidence in support of an actual-innocence claim.    In *McQuiggin v. Perkins*, the United States Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass... [to excuse] the expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).    The Supreme Court has cautioned, however, that "tenable actual-innocence gateway pleas are rare[.]"    *Id.*    To succeed on this claim, a petitioner must present a credible claim of actual innocence based on "new reliable evidence... that was not presented at trial," and he "must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt" in light of that new evidence of his factual innocence.    *Schlup v. Delo*, 513 U.S. 298, 324-29 (1995).

In the instant case, the court of appeal related the following facts adduced at trial:

The victim, L.G., testified at trial. Her date of birth was January 29, 1999. In the summer of 2010, she was living in a camper in Pearl River with her brother, her sister, her mother and the defendant. The defendant had been with the victim's mother for five or six years. The victim shared bunk beds in the

camper with her brother and sister. Her brother had the top bunk, and the victim shared the bottom bunk with her sister. According to the victim, on the night of the incident, the defendant came into her room and touched her on her private parts on her skin. She indicated the defendant touched her in the front and in the back. She stated her brother and sister were asleep when the offense occurred.

The State also played a DVD of the victim's August 16, 2010 interview with the Child Advocacy Center at trial. In the interview, the victim indicated the offense occurred in either June or July of 2010. She also identified the vagina and buttocks on a sketch of a girl as the area where the defendant had touched her.

The defendant also testified at trial. He claimed, during the summer of 2010, he was "having problems" with the victim. He stated she was failing fifth grade, and he told her if she did not pass, she would not be permitted to spend the night away from home, including at her grandmother's home. He testified the victim adored her grandmother. He also claimed the victim was aware he was having difficulties with her mother and that she had asked him to leave. He stated in August of 2010, the victim visited her grandmother and, while there, got a haircut. He indicated he was furious and told the victim she would never go back to her grandmother's house again. He claimed the victim's "little friend, Hannah" told her "[w]ell this happened to me with my uncle. We got him out of the picture for a few years by saying that he did this." He claimed the victim then made her allegations against him. According to the defendant, the incident related by the victim never happened.[30]

As set forth above, Sims testified that the inappropriate touching described by the victim did not occur. The defense suggested that the victim was angry with Sims and wanted him out of their lives. The defense also called Sims' mother, Carolyn Kendall, to bolster the theory that it never occurred. She testified that she stayed with the family throughout June 2010 and slept on the floor on a mattress next to the bed the victim shared with her sister, and

---

[30] *State v. Sims*, 2011-KA-1876, 2012 WL 1552048, at *1 (La. App. 1st Cir. 2012) (footnote omitted).

that Sims would have had to step on her in order to reach the victim.[31]

As part of his ineffective-assistance claim, Sims now argues that defense counsel should have explored the victim's enuresis and presented the defense that the touching was part of normal sanitary care, because Sims regularly checked and touched all the children, including the victim, to see if their clothes were soiled and needed changing at night.    As the state district court noted, the new bedwetting theory of defense is in direct conflict with Sims' trial testimony denying that any touching occurred.    Regardless, Sims has offered nothing new besides a different *purported* theory of defense.    He has not submitted any objective evidence, much less new reliable evidence, to support an "actual innocence" claim and establish the compelling grounds needed to prove "actual innocence."    He offers nothing to satisfy the rigorous burden of proving that with the new evidence "more likely than not no reasonable juror would have found him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 324.

In sum, the instant petition was filed well beyond the one-year federal limitations period.    Sims has not established any credible basis for tolling or actual innocence to avoid the time-bar.    His federal application for habeas corpus relief is therefore untimely and should be dismissed with prejudice.

## RECOMMENDATION

**IT IS RECOMMENDED** that Sims' application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.    A party's failure to file written objections to the proposed

---

[31] State Rec., Vol. 2 of 8, Trial Transcript, pp. 295-97.

findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[32]

New Orleans, Louisiana, this __17th__ day of ____March____, 2021.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[32] *Douglass* referenced the previously applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.